UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

-----------------------------------------------------------------x

RICHARD KAVAZANJIAN and
PATRICK JABBOUR, on their own behalf
and on behalf of all other persons similarly
situated,

     Plaintiffs,

  -against-

NANCY A. NAPLES, Commissioner, N.Y.S.
Department of Motor Vehicles; KATHLEEN
J. McHALE, Director, D.M.V. Call Centers;
JOSEPH P. CRISAFULLI, Director, D.M.V.
Telephone Customer Services; THEODORA
HUMPHREY, Manager, Downstate Call
Centers for D.M.V.; RAMONITA RAMIREZ,
Supervisor, Downstate Call Centers for D.M.V.;
DEPARTMENT OF MOTOR VEHICLES OF THE
STATE OF NEW YORK; GLENN S. GOORD,
Commissioner, N.Y.S. Department of Correctional
Services; JOHN NUTTALL, Deputy Commissioner
of Program Services, N.Y.S. Department of Correctional
Services; CHARLES M. DEVANE, Deputy Commissioner
for Administrative Services, N.Y.S. Department of
Correctional Services; DEPARTMENT OF CORRECTIONAL
SERVICES OF THE STATE OF NEW YORK, all in their
individual and official capacities,

     Defendants.

MEMORANDUM
AND ORDER
06-CV-3390 (JG)

-----------------------------------------------------------------x

JOHN GLEESON, United States District Judge.

    Plaintiffs, Richard Kavazanjian and Patrick Jabbour, bring this *pro se* action pursuant to the Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C. § 216(b) ("FLSA") and 28 U.S.C. § 1337. The Court grants plaintiffs' requests to proceed *in forma*

*pauperis* pursuant to 28 U.S.C. § 1915, but for the reasons discussed below, dismisses the complaint.

A.  Background

Richard Kavazanjian and Patrick Jabbour are suing under the FLSA to recover for unpaid minimum wages and overtime compensation. Kavazanjian is currently incarcerated at Arthur Kill Correctional Facility, and Jabbour is on parole supervision. Plaintiffs allege that beginning on January 1, 1998, they were employed by the New York State Department of Motor Vehicles ("DMV") based on a contract the New York State Department of Correctional Services ("DOCS") has with the DMV allowing inmates to work for the DMV's Downstate Call Centers. Compl. at 5, ¶ 13. Plaintiffs' allegations describe their duties:

> [We] were engaged in receiving, processing, checking the License, Registration and Title records from Defendants clients all over New York State, the United States, and internationally, or they were engaged in the mailing of instruction and application forms, duplicate Licenses, Registration Documents, or Certificates of Title, which are manufactured by Defendants, or in closely related processes or occupations directly essential to such production.

Compl. at 6, ¶ 15. Plaintiffs maintain that defendants refused to compensate plaintiffs and others for work "in excess of forty (40) hours at rates not less than one and one-half times the regular rates at which they were employed, contrary to the provisions of [the FLSA]," and that defendants "paid . . . less than $1.00 an hour, contrary to the provision of . . . the [FLSA]." Compl. at 6, ¶ 16. Plaintiffs seek unpaid minimum wages and overtime compensation for the hours they worked. Compl. at 7.

B.  Standard of Review

In reviewing plaintiffs' complaint, I am mindful that because plaintiffs are

proceeding *pro se,* their submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004). Under 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief can be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *See also* 28 U.S.C. § 1915A.

C.   Discussion

The Fair Labor Standards Act requires employers to pay their employees a minimum wage. The minimum wage provisions of the FLSA apply only to workers who are "employees" within the meaning of the Act. *See* 29 U.S.C. § 206(a). This term must be interpreted in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Danneskjold v. Hausrath*, 82 F.3d 37, 44 (2d Cir. 1996). In *Danneskjold*, the Second Circuit articulated its version of the economic reality test:

> We hold that prison labor that produces goods or services for institutional
> needs of the prison, whether voluntary or involuntary, inside or outside the
> institution, or in connection with a private employer, is not an employment
> relationship within the meaning of the FLSA. Where a prisoner's work for
> a private employer in the local or national economy would tend to
> undermine the FLSA wage scale . . . the FLSA applies.

*Danneskjold*, 82 F.3d at 44. The court reasoned that "the voluntary performance of labor that serves institutional needs of the prison is not in economic reality an employment relationship." *Id.* at 43.

The *Danneskjold* court contrasted its ruling with that of the Fifth Circuit in

3

*Watson v. Graves*, 909 F.2d 1549 (5th Cir.1990), which found the FLSA applicable to prison labor with an outside construction company. The *Danneskjold* court distinguished *Watson* on the ground that the prisoners in that case "worked at sub-FLSA wages for a company that was not providing services to the prison and that competed with companies required to pay wages set by the FLSA." *Danneskjold*, 82 F.3d at 44. In light of *Watson*, the court clarified that its holding "is limited to prison labor that produces goods or services for the use of the prison. We do not address the questions that arise when the prison labor is employed to produce goods or services that are sold in commerce." *Id.*

The plaintiffs have alleged that they processed DMV records and mailed DMV materials. While it is true that non-prisoner DMV employees may do similar work, it is not true that plaintiffs' services were "sold in commerce." Plaintiffs did not work at "sub-FLSA wages" for a company that "competed with companies required to pay wages set by the FLSA," as the prisoners did in *Watson*. The DMV is a state agency, and does not compete with any other company in order to provide the services rendered by the plaintiffs. Therefore, it is not possible for the plaintiffs to demonstrate that their labor was the sort that would undermine the FLSA wage scale, and the Second Circuit's ruling in *Danneskjold* applies here.

*Danneskjold's* reasoning applies for the additional reason that plaintiffs' labor contributed to the "institutional needs of the prison" by providing an opportunity for job skills and training. *See Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993) (en banc) (stating that prison labor programs "occupy idle prisoners, reduce disciplinary problems, nurture a sense of

responsibility, and provide valuable skills and job training).[1]

Because plaintiffs were engaged in performance of labor that served (a) another state agency not engaged in commerce, and (b) the institutional needs of the prison, their work for the DMV was not in economic reality an employment relationship. Therefore, I find that plaintiffs have no right to federal minimum wage or hour compensation under the FLSA.

D.  Conclusion

Accordingly, the complaint is dismissed for failure to state a claim. 28 U.S.C. § 1915 (e)(2)(B)(ii); 28 U.S.C. § 1915A. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

So Ordered.

John Gleeson, U.S.D.J.

Dated: September 26, 2006
       Brooklyn, New York

---

[1] Somewhat more emphatically, the Seventh Circuit concluded, "People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours." *Bennet v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RICHARD KAVAZANJIAN and
PATRICK JABBOUR, on their own behalf
and on behalf of all other persons similarly
situated,

                Plaintiffs,

                                                                                                        CIVIL JUDGMENT
        -against-                                          06-CV-3390 (JG)

NANCY A. NAPLES, Commissioner, N.Y.S.
Department of Motor Vehicles; KATHLEEN
McHALE, Director, D.M.V. Call Centers;
JOSEPH P. CRIAFULLI, Director, D.M.V.
Telephone Customer Services; THEODORA
HUMPHREY, Manager, Downstate Call
Centers for D.M.V.; RAMONITA RAMIREZ,
Supervisor, Downstate Call Centers for D.M.V.;
DEPARTMENT OF MOTOR VEHICLES OF THE
STATE OF NEW YORK; GLENN S. GOORD,
Commissioner, N.Y.S. Department of Correctional
Services; JOHN NUTTALL, Deputy Commissioner
of Program Services, N.Y.S. Department of Correctional
Services; CHARLES M. DEVANE, Deputy Commissioner
for Administrative Services, N.Y.S. Department of
Correctional Services; DEPARTMENT OF CORRECTIONAL
SERVICES OF THE STATE OF NEW YORK, all in their
individual and official capacities,

                Defendants.
----------------------------------------------------------------x

        Pursuant to the Order issued by this Court on September 26, 2006 dismissing the complaint, it is

        **ORDERED, ADJUDGED AND DECREED**: That the complaint is hereby dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A. The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from the Court's order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.


Dated: Brooklyn, New York
       September 26, 2006


                                                                             JOHN GLEESON, U.S.D.J.